**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
————————————————————————x

IN RE                                        Hearing: June 29, 2017
                                             10:00 a.m.

**1231 41 STREET, LLC,**                      Chapter 11

                        Debtor.              Case No.: 1-17-41407-ess

————————————————————————x

## NOTICE OF HEARING

**PLEASE TAKE NOTICE**, that a hearing will be held before the Honorable Elizabeth S. Stong, at the United States Bankruptcy Court, 271-C Cadman Plaza East, Brooklyn, New York 11201, on the 29th day of June, 2017 at 10:00 a.m., or soon thereafter as counsel may be heard ("the Hearing"), to consider the application of creditors Madeline Montefinese a/k/a Maddalena Montefinese, Vincenzo Montefinese and Maria Josephine Montefinese a/k/a Maria J. Salerno (the "Movants") for an order: (a) vacating the automatic stay pursuant to 11 U.S.C. §362(d) to permit Movants, as sellers, to receive and retain all sums paid by Debtor, as purchaser, pursuant to that certain Residential Contract of Sale and Addendum to Contract (collectively, the "Contract") for the purchase and sale of the real property located at 1231 41st Street, Brooklyn, New York 11218 (the "Property"), including but not limited to the Downpayment (as defined in the Contract) in the amount of $56,250.00 (the "Downpayment"); and (b) vacating the automatic stay to permit Movants to exercise, do, or perform any act, right, or power, in connection with, arising out of, or relating to the Property, including but not limited to: sell, convey, exchange, deliver, assign, lease, bequeath or gift, transfer,  or permit to be transferred, the Property (in whole or in part) to any person or entity in Movant's sole and absolute discretion; and/or pledge, mortgage, hypothecate, encumber, dispose of, occupy, or use the Property (in whole or in part) in

any manner or form, and (c) granting such other, further and different relief as may be just and proper.

**PLEASE TAKE FURTHER NOTICE**, that objections must be served upon Coritsidis & Lambros, PLLC, attorneys for the Movants, 46 Trinity Place, 4th Floor, New York, New York 10006, Attention: Jeffrey A. Gangemi, Esq., and filed with the Clerk of the Bankruptcy Court, 271-C Cadman Plaza East, Brooklyn, New York 11201, with a courtesy copy for Judge Stong, together with proof of service, so as to be received at least one (1) business day before the hearing.

Dated:     New York, New York
           June 7, 2017

                                    Coritsidis & Lambros, PLLC

                                    /s/ Jeffrey A. Gangemi
                                    By: Jeffrey A. Gangemi (JG-1116)
                                    *Attorneys for Movants*
                                    *Madeline Montefinese a/k/a Maddalena*
                                    *Montefinese, Vincenzo Montefinese and*
                                    *Maria Josephine Montefinese a/k/a Maria J.*
                                    *Salerno*
                                    46 Trinity Place, 4th Floor
                                    New York, New York 10006
                                    (212) 797-4600, Fax (212) 797-4601

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
————————————————————————————————x

IN RE                                                    Hearing:  June 29, 2017
                                                         10:00 a.m.


**1231 41 STREET, LLC,**                                 **Chapter 11**

                          Debtor.                        **Case No.: 1-17-41407-ess**

————————————————————————————————x

## MOTION TO VACATE THE AUTOMATIC STAY

Madeline Montefinese a/k/a Maddalena Montefinese, Vincenzo Montefinese and Maria

Josephine Montefinese a/k/a Maria J. Salerno (collectively, the "Movants"), by their attorneys,

Coritsidis & Lambros, PLLC, as and for their Motion for an order: (a) vacating the automatic

stay pursuant to 11 U.S.C. §362(d) to permit Movants, as sellers, to receive and retain all sums

paid by Debtor, as purchaser, pursuant to that certain Residential Contract of Sale and

Addendum to Contract (collectively, the "Contract") for the purchase and sale of the real

property located at 1231 41st Street, Brooklyn, New York 11218 (the "Property"), including but

not limited to the Downpayment (as defined in the Contract) in the amount of $56,250.00 (the

"Downpayment"); and (b) vacating the automatic stay to permit Movants to exercise, do, or

perform any act, right, or power, in connection with, arising out of, or relating to the Property,

including but not limited to: sell, convey, exchange, deliver, assign, lease, bequeath or gift,

transfer,  or permit to be transferred, the Property (in whole or in part) to any person or entity in

Movant's sole and absolute discretion; and/or pledge, mortgage, hypothecate, encumber, dispose

of, occupy, or use the Property (in whole or in part) in any manner or form, and (c) granting such

other, further and different relief as may be just and proper, respectfully represent as follows.

## PRELIMINARY STATEMENT

1.  Debtor filed its Chapter 11 petition on the <u>morning</u> of the 'time is of the essence' closing date – i.e., March 27, 2017 -- for the purchase of the Property. Movants are the *contract vendors* under the Contract. Since the filing of the petition, the Debtor has not tendered the balance of the purchase price due under the Contract, or made any application to the Court to complete the purchase and sale of the Property.

2.  It is respectfully submitted that the automatic stay should be vacated pursuant to 11 U.S.C. § 362(d)(1) for cause, because the Debtor's time to close the sale under the Contract has expired by operation of law. Consequently, the Debtor no longer has any interest in the Property or the Contract or any sums paid by Debtor to Movants pursuant to the Contract and Addendum to Contract, including the Downpayment in the amount of $56,250.00 or the Nonrefundable Payments (as hereinafter defined in footnote no. 2 below; collectively, the "Contract Payments").

3.  As a result of the Debtor's complete lack of equity in the Contract Payments, the automatic stay should also be vacated pursuant to § 362(d)(2). The Debtor further lacks equity in the in the Contract and Property because neither 11 U.S.C. § 108(b) nor 11 U.S.C. § 365 gives the Debtor a right to cure the default that arose from the Debtor's failure to close by the 'time of the essence' March 27, 2017 closing date. Thus, neither the Contract Payments nor the Property can be a part of any reorganization.

4.  Therefore, the instant  Motion to vacate the automatic pursuant to 11 U.S.C. §362(d) should be granted in its entirety.

## BACKGROUND

5.  The Movants are siblings and the *contract vendors* under the Contract.[1]

6.  On or about April 27, 2016, the Movants entered into the Contract to sell the Property to the Debtor. A copy of the Contract together with the accompanying Rider to Contract is annexed hereto as Exhibit 1.

7.  Paragraph 3 of the Contract provides for a One Million One Hundred Twenty Five Thousand ($1,125,000.00) Dollar purchase price (the "Purchase Price"), with a Fifty Six Thousand Two Hundred and Fifty ($56,250.00) Dollar deposit to be paid upon execution of the Contract (the "Downpayment"), and One Million Sixty Eight Thousand Seven Hundred Fifty ($1,068,750.00) Dollars to be paid at closing. The $56,250.00 Downpayment was provided under the Contract, and is presently held in escrow by Movants' transactional counsel, Held, Held, & Held, as attorneys.

8.  The Contract provided for an "all-cash deal" without any mortgage contingency, and Debtor was not expected to obtain any financing to consummate the purchase of the Property. See Exhibit 1, generally.

9.  Paragraph 5 to the Rider to Contract entitled "*LEGAL OCCUPANCY*" provided that:

    "...*b) The premises are sold subject to the following tenancies: NONE*"

10. Paragraph 6 to the Rider to Contract entitled "*DELIVERY OF POSSESSION*" provided that "*Seller shall deliver the entire premises vacant, and in broom clean condition at the closing of title.*"

11. Since in or about April of 2016, the Property has been vacant and contains no tenancies, and the Movants purposefully did not lease the Property in anticipation of the closing of the

---

[1] The Movants are the children and the heirs at law and next of kin of Giovanna Montefinese ("Giovanna"), who died intestate on June 5, 2014, in Kings County, New York. At the time of her death, Giovanna was the record owner of the Property.

Contract. As such, the Property currently has no rental income to pay the Property's carrying costs.

12. Paragraph 15 of the Contract provided that the "Closing shall take place at the office of HELD, HELD, & HELD at 2:00 o'clock on/ABOUT AUGUST 25, 2016". See Ex. 1.

13. Movants and Debtor scheduled a closing for September 14, 2016 at the offices of Held, Held, Held at 2:00 p.m.

14. Prior to the September 14, 2016 closing date, Debtor's counsel informed Movants' counsel that Debtor was unable to close on the purchase of the Property.

15. In or about December of 2016, after negotiations between the parties' counsel, the Movants and Debtor entered into the Addendum to Contract (the "Addendum"), a copy of which is annexed hereto as Exhibit 2.

16. The Addendum provided, in pertinent part, as follows:

> 2. ... If Purchaser so elects to exercise the Option to extend the closing date to March 27, 2017, then Purchaser shall provide to Seller's Attorney a certified or bank check made payable to Madeline Montefinese in the amount of $5,000.00 along with the notification of Purchaser's election to exercise the Option pursuant to this Paragraph 2... The $5,000.00 is non-refundable and is in addition to the purchaser price of $1,125,000.00.

> 3. Upon full execution of this Addendum by both Seller and Purchaser and the release to Purchaser of such fully executed Addendum pursuant to Paragraph 4 below, the Escrowee shall release to Seller the Downpayment in the amount of $56,250.00.

> 4. Upon execution of this Addendum by Purchaser, Purchaser shall provide to Seller's Attorney a certified check made payable to Seller in the amount of $28,387.00, which certified check shall be held in escrow by Seller's Attorney until (a) Seller shall have executed this Addendum, and (b) the fully executed Addendum shall have been released to Purchaser. Upon Seller's execution of this Addendum, then Seller's Attorney shall release (a) the certified check to Seller and (b) the fully executed Addendum to Purchaser... The said sum ($28,387.00) represents additional consideration paid by the Purchaser to the Seller in addition to the purchase price of $1,125,000.00. The $28,387.00 is non-refundable.

*5. Time is of the Essence against the Purchaser with respect to all dates set forth herein. If closing does not take place by February 23, 2017 or the extended date of March 27, 2017, then all monies given herein shall remain the property of the Seller and the contract is null and void without further notice. Purchaser authorizes the Escrowee to distribute the funds if any, as per this Addendum to Contract.*"[Emphasis Supplied] (See Exhibit 2)

17. Debtor extended the closing date to the 'extended date' of March 27, 2017 provided in the Addendum (the "3/27/17-TOE Closing").[2]

18. On and at the 3/27/17-TOE Closing, Movants were ready, willing, and able to perform under the Contract and Addendum and deliver the Property to Debtor.

19. The Movants did not extend or adjourn the 3/27/17-TOE Closing.

20. At all times on and at the 3/27/17-TOE Closing, Movants were ready, willing, and able to perform under the Contract and Addendum, deliver the Property to Debtor, and close on the sale of the Property.

21. The Debtor never objected to the 3/27/17-TOE Closing.

22. However, on the morning of the 3/27/17-TOE Closing, the Debtor filed its Chapter 11 petition.

23. The Debtor failed to appear at the 3/27/17-TOE Closing.

24. The Debtor failed to tender the balance of the Purchase Price to Movants at the 3/27/17-TOE Closing.

25. The Debtor failed to close on the purchase of the Property at the 3/27/17-TOE Closing.

26. On the 3/27/17-TOE Closing, Debtor was <u>not</u> ready, willing, and able to perform under the Contract and Addendum.

---

[2] Debtor provided Movants with the $5,000.00 nonrefundable payment due under Paragraph 2 of the Addendum, and the $28,387.00 nonrefundable payment due under Paragraph 4 of the Addendum (collectively, the "Nonrefundable Payments").

27. On the 3/27/17-TOE Closing, Debtor was <u>not</u> ready, willing, and able to purchase the Property from Movants.

28. On the 3/27/17-TOE Closing, Debtor failed and/or refused to perform under the Contract and Addendum and close on the purchase of the Property.

29. On March 27, 2017, the Debtor defaulted under the Contract and Addendum.

30. The Debtor had sufficient time to perform its obligations under the Contract and Addendum.

31. The Debtor has no lawful excuse for defaulting under the Contract and Addendum.

32. The Debtor remains in default under the Contract and Addendum.

33. The Debtor has expressly admitted its *"inability to close on the aforesaid contract"* in paragraph 4 to its Affidavit Pursuant to Local Rule 1007-4, electronically filed in the instant bankruptcy case as Doc. 15, and annexed hereto as Exhibit 3.

34. The Debtor has not tendered any payments to Movants since the petition date. Specifically, the Debtor has not tendered the balance of the Purchase Price at any time, either before or after the 3/27/17-TOE Closing of the sale of the Property under the Contract and Addendum.

## <u>RELIEF REQUESTED HEREIN</u>

35. To begin, there is divergent case law as to whether the filing of a bankruptcy petition extends a debtor's time to close on a pre-petition Contract to purchase property.

36. Some Courts have held that section 108(b) of the Bankruptcy Code extends a debtor's time to close for **<u>up to 60 days</u>** after the filing date. <u>E.g. In re Santa Fe Development & Mortgage Corp.</u>, 16 B.R. 165 (9th Cir. B.A.P. 1981). Other Courts have held that section 108(b) is not intended to extend contractual closing dates at all, and, therefore, the filing of a bankruptcy petition does not extend deadlines for closing pre-petition contracts. <u>Good Hope Refineries, Inc. v Benavides</u>, 602 F2d 998 [1st Cir 1979].

37. However, the Courts uniformly hold that even where 108(b) does apply, the debtor's time cannot be extended beyond the 60 days allowed by section 108(b) of the Bankruptcy Code. E.g. In re New Breed Realty Enterprises, Inc., 278 BR 314, 318 [Bankr EDNY 2002]; See Also In re Empire Equities Capital Corp., 405 BR 687, 690–91 [Bankr SDNY 2009] ("…the Debtor has 60 days from the petition date or until June 29, 2009, to exercise the option"); In Re Benje 54 B.R. 226 (Bankr. D. Hawii 1985) (Debtor's filing of Chapter 11 petition extended time in which debtor could pay vendor $2,840,006.40 as provided for in option Contract by 60 days pursuant to Section 108(b), but, since debtor did not pay vendor in such time period, option automatically terminated and debtor had no further rights.); Accord. In re Ludlow Hosp. Soc. Inc. 124 F.3d 22 (1st Cir. 1997) (Bankruptcy court could not extend one-year deadline for sale of capital assets by hospitals terminating Medicare program participation and seeking supplemental reimbursement for capital-asset depreciation credits, so as to permit Chapter 7 debtor-hospital to file reimbursement claim for assets sold after deadline, given applicability of provision granting trustee 60-day grace period for performing act required under nonbankruptcy laws to preserve debtor's prepetition rights, which foreclosed use of court's equitable powers and barred extension.); In re Rutterbush, 34 B.R. 101 (Bankr. E.D. Mich. 1982) (Specific Bankruptcy Code provision was clear congressional command that rights of redemption purchaser can be stayed for no longer than 60 days, and such provision took precedence over general Bankruptcy Code provision authorizing bankruptcy courts to issue any order, process or judgment necessary or appropriate to carry out provisions of the title.).

38. In granting a contract vendor's motion to vacate the automatic stay pursuant to § 362(d)(1) and § 362(d)(2), the Court in In re New Breed Realty Enterprises, Inc., found:

"…In this case, the debtor's time to tender the additional $300,000 deposit and to close the sale under the Agreement had not expired on the Petition Date. If § 108(b) is applicable, the debtor's time to tender the deposit and close the sale was extended to August 29, 2001 (60 days from the Petition Date). In any event, the debtor failed to cure its defaults within the 60–day period provided under § 108(b)." Id. at 318.

39. Moreover, "…the Bankruptcy Code as amended in 2005 makes it clear that § 365 provides no recourse to [a] Debtor [when] its default under the contract cannot be cured and, accordingly, the contract cannot be assumed." In re Empire Equities Capital Corp., 405 BR at 689–90; See Also In re New Breed Realty Enters., Inc., 278 B.R. at 322–23. Therefore, "§ 365 is unavailable to a debtor in a case … where the passage of a time-of-the-essence deadline, which is a material default under applicable New York law, in effect terminates the contract." In re Empire Equities Capital Corp., 405 BR at 689–90; See Also In re New Breed Realty Enters., Inc., supra. "Courts examine the provisions of the underlying contract and non-bankruptcy law to determine the nature of a default and the cure it requires, for purposes of § 365." In re Empire Equities Capital Corp., 405 BR at 689–90.

40. "Cases interpreting New York law are unanimous in holding that the failure to close by the specified closing date in a sales contract that declared time to be of the essence is a material breach which terminates defaulting party's right to enforce the contract." In re New Breed Realty Enterprises, Inc., 278 BR at 322.; See Also New Colony Homes, Inc. v Long Is. Prop. Group, LLC, 21 AD3d 1072 [2d Dept 2005]; Kaiser-Haidri v Battery Place Green, LLC, 85 AD3d 730 [2d Dept 2011].

41. In the case at bar, therefore, even if section 108(b) extended the Debtor's time to close beyond the contractual March 27, 2017 Time of the Essence Closing date, that extension expired on May 26, 2017 (60 days after the petition date), and the Debtor failed to tender payment of the balance of the Purchase Price before that deadline. Accordingly, the Debtor's

time to close on the Contract and Addendum has expired by operation by law, and *"the contract is null and void"*. See Exhibit 2, Addendum, ¶5. In re New Breed Realty Enters., Inc., supra.

42. Thus, under paragraph 23 of the Contract and paragraph 5 of the Addendum, the Movants are entitled to receive and retain all payments made by the Debtor to Movants under the Contract and Addendum, and to proceed to sell the Property to a new party (or take whatever other actions they deem appropriate with respect to the Property), should the Movants choose to do so.

43. Section 362(d)(1) of the Bankruptcy Code provides that the Court, upon request of a party in interest, may grant relief from the automatic stay for "cause."

44. In this case, the Movants respectfully submit that cause exists to lift the stay because the Debtor failed to close on the Contract, which was an "all-cash deal," and the Debtor's estate, therefore, has no further interest in the Contract Payments or the Property.

45. In addition, section 362(d)(2) of the Bankruptcy Code provides that the automatic stay should be vacated where the estate lacks equity in the subject property, and the property is not necessary for an effective reorganization.

46. Here, the Debtor lacks equity in the Contract Payments because the Debtor contractually and voluntarily provided those payments to the Movants without any further right or recourse to Debtor, as expressly provided in Paragraphs 2, 3, 4, and 5 of the Addendum as set forth above in ¶16 of this Motion. Additionally, the Debtor lacks equity in the Contract and the Property because the Debtor's time to close under the Contract and Addendum has expired, as conclusively shown by the indisputable facts in this case. Therefore, neither the Contract Payments nor the Contract can be part of any reorganization, even if a plan is in prospect.

47. Lastly, in this case, the Debtor has listed Movants as its only creditors, in Debtor's filings to date.  Notably, no representatives of the Debtor appeared at the Section 341(a) meeting on May 8, 2017, and the meeting of creditors was, therefore, closed by the United States Trustee.  Likewise, no representatives of the Debtor appeared at the Initial Case Management Conference held on May 8, 2017. Since the Movants are the only listed creditors in this case, the best interests of the creditors require that the automatic stay be vacated.

48. Therefore, the Movants are entitled to an order lifting the automatic stay under both sections 362(d)(1) and (d)(2) of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, Movants respectfully request that the Court enter an order:  (a) vacating the automatic stay pursuant to 11 U.S.C. §362(d) to permit Movants, as sellers, to receive and retain all sums paid by Debtor, as purchaser, pursuant to that Contract and Addendum, including but not limited to the Downpayment in the amount of $56,250.00; and (b) vacating the automatic stay to permit Movants to exercise, do, or perform any act, right, or power, in connection with, arising out of, or relating to the Property, including but not limited to: sell, convey, exchange, deliver, assign, lease, bequeath or gift, transfer,  or permit to be transferred, the Property (in whole or in part) to any person or entity in Movant's sole and absolute discretion; and/or pledge, mortgage, hypothecate, encumber, dispose of, occupy, or use the Property (in whole or in part) in any manner or form, and (c) granting such other, further and different relief as may be just and proper.

Dated:        New York, New York
              June 2, 2017

                              Coritsidis & Lambros, PLLC

                              /s/ Jeffrey A. Gangemi
                              By: Jeffrey A. Gangemi (JG-1116)
                              *Attorneys for Movants*
                              *Madeline Montefinese a/k/a Maddalena*
                              *Montefinese, Vincenzo Montefinese and*
                              *Maria Josephine Montefinese a/k/a Maria J.*
                              *Salerno*
                              46 Trinity Place, 4th Floor
                              New York, New York 10006
                              (212) 797-4600, Fax (212) 797-4601

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re

**1231 41 STREET, LLC,**

                        Debtor.

-------------------------------------------------------x

STATE OF NEW YORK     )
                             )ss.:
COUNTY OF NEW YORK  )

**AFFIDAVIT IN SUPPORT**

**Chapter 11**

**Case no.  1-17-41407-ess**

    Madeline Montefinese a/k/a Maddalena Montefinese, being duly sworn, hereby deposes and says the following:

1. I, along with my brother, Vincenzo Montefinese ("Vincenzo") and sister, Maria Josephine Montefinese a/k/a Maria J. Salerno ("Maria"), are the alleged sole creditor of debtor 1231 41 Street, LLC ("Debtor") [Myself, Vincenzo and Maria shall hereinafter be collectively referred to as the "We" or "Movants"].

2. Movants are the *contract vendor[1]* under a Residential Contract of Sale, whereby Debtor agreed to purchase the property located at 1231 41st Street, Brooklyn, New York 11218 (the "Property"), as contract vendee. As such, I am fully familiar with, and have personal knowledge of, the facts and circumstances relating to the instant case.

3. I submit this affidavit in support of Movants' instant motion seeking *inter alia* an order vacating the automatic stay pursuant to 11 U.S.C. §362(d) (the "Motion").

---

[1] We, the Movants are the children and the heirs at law and next of kin of Giovanna Montefinese ("Giovanna"), who died intestate on June 5, 2014, in Kings County, New York. At the time of her death, Giovanna was the record owner of the Property.

1

4. Debtor filed its Chapter 11 petition on the *morning* of the 'time is of the essence' closing date set under the Contract for the purchase of the Property.

5. The Property is a three-family residential house located in Borough Park, Brooklyn.

6. Neither I nor my siblings are professional real estate investors or operators; nor were any of us interested in owning and managing a residential investment property in Brooklyn. Movants decided to sell the Property and entered into a Residential Contract of Sale with the Debtor in or about April of 2016, a copy of which is annexed hereto as Exhibit 1 (the "Original Contract"). In connection with the Original Contract, Debtor tendered the Downpayment to Movants' attorneys, Held, Held & Held, 6920 Bay Parkway, Brooklyn, New York 11204, as escrow agent under the Contract (the "Escrow Agent").[2]

7. What was supposed to be a straightforward "all-cash" real estate transaction with an experienced real estate developer, has turned into a *stressful* financial and emotional strain upon me and my family.

8. Since in or about April of 2016, the Property has been vacant and contains no tenancies, and we purposefully did not lease the Property, as was required under the Contract, in anticipation of the closing of the purchase and sale. As such, the Property has generated no rental income to pay its carrying costs. Even worse, the Property's vacancy has made it impossible to secure sufficient property insurance.

9. Understandably, Movants were, at all times, ready, willing, able and highly motivated to sell the Property to Debtor for the Purchase Price under the terms of the Contract. However,

---

[2]  In or about December of 2016, the Movants and Debtor entered into the Addendum to Contract (the "Addendum"), a copy of which is annexed hereto as Exhibit 2, which will be discussed in detail in ¶14-15, below. Hereinafter the "Original Contract" together with the "Addendum" shall be collectively referred to as the "Contract."

Debtor has never been ready, willing or able to close the purchase and sale of the Property under the Contract. In fact, Debtor has had two (2) separate opportunities to close under the Contract (over a span of seven months) and failed to do so each time, notwithstanding that the Addendum of Contract made the March 27. 2017 closing date "Time is of the Essence against Purchaser". See Exhibit 2, ¶2 and 5.

**A.    Movants' *First* Attempt To Afford Debtor An Opportunity To Close On The Purchase Pursuant To The Original Contract**

10. Under the Original Contract, the closing was to take place "on/ABOUT August 25, 2016" under the Original Contract. (See Original Contract annexed as Exhibit 1 to this motion, ¶15).

11. Thereafter, Movants made efforts to schedule a closing date for August 25, 2016, and Movants and Debtor eventually scheduled a closing for September 14, 2016 at the offices of the Escrow Agent at 2:00 p.m.

12. However, despite Movants' desire and ability to close, prior to the scheduled September 14, 2016 closing date, Debtor's counsel informed Movants' counsel that Debtor was unwilling to close on the purchase of the Property.

13. For approximately the next three (3) months, Movants made efforts to schedule a closing date, however, despite Movants efforts to set a closing date, Debtor failed to demonstrate any willingness to commit to a closing date.

**B.    The Addendum to Contract**

14. As a result of Debtor's refusal to establish a closing date, in or about December of 2016, at the request of Debtor, the Movants and Debtor entered into an Addendum to Contract for the

3

Sale of the Property (the "Addendum"). A copy of the Addendum is annexed hereto as Exhibit 2.

15. The Addendum provided, in pertinent part, as follows:

> *"2. ... If Purchaser so elects to exercise the Option to extend the closing date to March 27, 2017, then Purchaser shall provide to Seller's Attorney a certified or bank check made payable to Madeline Montefinese in the amount of $5,000.00 along with the notification of Purchaser's election to exercise the Option pursuant to this Paragraph 2... The $5,000.00 is non-refundable and is in addition to the purchaser price of $1,125,000.00.*
>
> *3. Upon full execution of this Addendum by both Seller and Purchaser and the release to Purchaser of such fully executed Addendum pursuant to Paragraph 4 below, the Escrowee shall release to Seller the Downpayment in the amount of $56,250.00.*
>
> *4. Upon execution of this Addendum by Purchaser, Purchaser shall provide to Seller's Attorney a certified check made payable to Seller in the amount of $28,387.00, which certified check shall be held in escrow by Seller's Attorney until (a) Seller shall have executed this Addendum, and (b) the fully executed Addendum shall have been released to Purchaser. Upon Seller's execution of this Addendum, then Seller's Attorney shall release (a) the certified check to Seller and (b) the fully executed Addendum to Purchaser... The said sum ($28,387.00) represents additional consideration paid by the Purchaser to the Seller in addition to the purchase price of $1,125,000.00. The $28,387.00 is non-refundable.*
>
> *5. <u>Time is of the Essence against the Purchaser with respect to all dates set forth herein. If closing does not take place by</u> February 23, 2017 or <u>the extended date of March 27, 2017, then all monies given herein shall remain the property of the Seller and the contract is null and void without further notice.</u> Purchaser authorizes the Escrowee to distribute the funds if any, as per this Addendum to Contract." [Emphasis Supplied] (See Exhibit 2)*

16. Debtor extended the closing date to the 'extended date' of March 27, 2017 provided in the Addendum (the "3/27/17-TOE Closing").[3]

## C. **The 3/27/17-TOE Closing**

---

[3] Debtor provided Movants with the $5,000.00 nonrefundable payment due under Paragraph 2 of the Addendum, and the $28,387.00 nonrefundable payment due under Paragraph 4 of the Addendum (collectively, the "Nonrefundable Payments").

17. On the scheduled 3/27/17-TOE Closing, myself, Vincenzo and Maria were prepared and available to deliver a deed to the Property to Purchaser and take all other actions to complete the transaction under the Contract and Addendum.

18. However, neither the Debtor nor its counsel appeared at Escrow Agent's Offices and instead filed its Chapter 11 petition to the Bankruptcy Court in the instant case, earlier that morning.

19. The Movants – including myself -- were ready, willing, and able to perform under the Contract and deliver a deed to the Property to Debtor.

20. As a result of Debtor's failure to appear on the 3/27/17-TOE Closing and accept the deed to the Property and pay the balance of the Purchase Price, Debtor defaulted under the Contract.

21. As a result of Debtor's default under the Contract and Addendum, I, on behalf of Movants have requested the Escrow Agent to release the Downpayment to Movants, as is expressly authorized and provided in paragraph 3 to the Addendum. In any event, the Downpayment has not yet been released to the Movants, given the Escrow Agent's deference to the automatic stay.

## THE AUTOMATIC STAY SHOULD BE VACATED

22. Simply put, Debtor incurably defaulted under the Contract by failing to close on the purchase on the 3/27/17-TOE Closing, and remain in default under the Contract. More so, all of Debtor's actions and omissions detailed above, are entirely inconsistent with any intention to purchase the Property from the Movants.

23. Indeed, the Debtor's principal, Mr. Samuel Pfeiffer, has expressly admitted Debtor's "inability to close on the aforesaid contract" in paragraph 4 to its Affidavit Pursuant to Local

Rule 1007-4, electronically filed in the instant bankruptcy case as Doc. 15, and annexed hereto as Exhibit 3.

24. Genuinely, my siblings and I entered into the Contract with the Debtor based on the Debtor's promise of an "all-cash" deal (i.e., no contingencies) and relatively quick closing. Instead, this transaction has been nothing short of a nightmare for me and my family.

25. Given Debtor's eleventh hour bankruptcy filing to avoid the 3/27/17-TOE Closing coupled with the fact that Debtor has taken no action in this case to complete the purchase of the Property, the conclusion is inescapable that Debtor did not commence this bankruptcy Case to complete the sale of the Property, but rather, to ransom Movants' ability to sell the Property, in exchange for a return of some of the Debtor's Downpayment. It is respectfully submitted that the Court should not permit Debtor to use the processes of this Court for illegitimate leverage. As shown below and in the accompanying supporting papers, the automatic stay in the Case should be vacated.

26. Lastly, I have read the annexed Motion To Vacate Automatic Stay prepared by my attorneys, Coritsidis & Lambros, PLLC, and I believe the facts stated therein to be true, to the best of my knowledge and belief.

27. Therefore, Movants respectfully request that the Court enter an order: (a) vacating the automatic stay pursuant to 11 U.S.C. §362(d) to permit Movants, as sellers, to receive and retain all sums paid by Debtor, as purchaser, pursuant to the Contract and Addendum including but not limited to the Downpayment (as defined in the Contract) in the amount of $56,250.00; and (b) vacating the automatic stay to permit Movants to exercise, do, or perform any act, right, or power, in connection with, arising out of, or relating to the

Property, including but not limited to: sell, convey, exchange, deliver, assign, lease, bequeath or gift, transfer, or permit to be transferred, the Property (in whole or in part) to any person or entity in Movant's sole and absolute discretion; and/or pledge, mortgage, hypothecate, encumber, dispose of, occupy, or use the Property (in whole or in part) in any manner or form, and (c) granting such other, further and different relief as may be just and proper.

**WHEREFORE**, it is respectfully requested that the instant motion by Movants be granted in its entirety, and that the Court grant Movants such other relief as the Court deems just and equitable.

Madeline Montefinese a/k/a
Maddalena Montefinese

Sworn to this 2 day of
June, 2017

NOTARY PUBLIC

JEFFREY GANGEMI
Notary Public, State of New York
No 02GA6027549
Qualified In Kings County
Commission Expires July 6, 2019

7

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

**In re**

1231 41 STREET, LLC,

                Debtor.

----------------------------------------------------------x

**AFFIDAVIT IN SUPPORT**

**Chapter 11**

**Case no.** 1-17-41407-ess

STATE OF NEW YORK       )
                            ) ss.:
COUNTY OF KINGS         )

Bradley D. Zam, being duly sworn, deposes and says:

1.  I am an attorney duly admitted to practice before the Courts of the State of New York, and

    'of counsel' to the firm of Held, Held & Held (the "Firm"), having acted as 'of counsel' to

    the Firm since on or about 2008.

2.  I was admitted to practice law in the State of New York in 2005, and have been practicing

    law ever since. Throughout my legal career, my practice has included real estate transactions

    and estates.  Over the years, I have personally closed numerous real estate transactions,

    including the purchase and sale of residential properties.

3.  I handled, on behalf of the Firm, the representation of the Movants in this case, to wit:

    Madeline Montefinese a/k/a Maddalena Montefinese, Vincenzo Montefinese and Maria

    Josephine Montefinese a/k/a Maria J. Salerno ("Maria Salerno") relating to the Residential

    Contract of Sale for the purchase and sale (the "Contract") of the property located at 1231

    41st Street, Brooklyn, New York 11218 (the "Property"), between Movants, as Contract

    Vendors; and Debtor, as Contract Vendee. As such, I have personal knowledge of, and am

    fully familiar with the facts and circumstances relating to the instant case.

4.  I submit this affidavit in support of Movants' instant motion seeking *inter alia* an order

    vacating the automatic stay pursuant to 11 U.S.C. §362(d) (the "Motion").

5.  Movants and Debtor entered into the Contract on or about April 27, 2016 (A true and accurate copy of the fully executed Contract is annexed as Exhibit 1 to the Motion).

6.  The purchase price of the Property under the Contract was One Million One Hundred Twenty Five Thousand ($1,125,000.00) Dollar (the "Purchase Price"), with a Fifty Six Thousand Two Hundred and Fifty ($56,250.00) Dollar downpayment to be paid upon execution of the Contract (the "Downpayment"). The $56,250.00 Downpayment was tendered to the Firm, to be held in escrow under the terms of the Contract.

7.  The Contract provided for an "all-cash deal" without any mortgage contingency, and Debtor was not expected to obtain any financing to consummate the purchase of the Property. See Exhibit 1, generally.

8.  Paragraph 15 of the Contract provided that the "Closing shall take place at the office of HELD, HELD, & HELD at 2:00 o'clock on/ABOUT AUGUST 25, 2016". See Exhibit 1.

9.  Debtor, however, neither attempted to schedule a closing for August 25, 2016, nor confirmed its ability or readiness to close on that date. Shortly thereafter, Movants and Debtor scheduled a closing for September 14, 2016, at 2:00 p.m., at the Firm's offices, located at 6920 Bay Parkway, Brooklyn, New York 11204 (the "HH&H's Offices").

10. However, prior to the September 14, 2016 closing date, Debtor's transactional counsel, Mr. Cris Gottlieb, Esq., informed me via telephone that Debtor was unable to close on the purchase of the Property at that time. And even prior to that telephone call, Mr. Gottlieb had requested for Movants to provide Debtor with a purchase money mortgage – which Movants unequivocally rejected.

11. Shortly thereafter, Debtor hired another attorney, Mr. Mordy Flam, Esq., to negotiate *inter alia* a rescheduled date for the closing. I personally had numerous discussions with Mr. Flam regarding rescheduling a date to close the sale of the Property.

12. On December 28, 2016, after extensive negotiations with Mr. Flam, the Movants and Debtor entered into the Addendum to Contract (the "Addendum"), a copy of which is annexed to the Motion as Exhibit 2[1]. More specifically, the Movants and Debtor signed and exchanged fully executed counterparts of the Addendum.

13. The Addendum provided, in pertinent part, as follows:

*2. ... If Purchaser so elects to exercise the Option to extend the closing date to March 27, 2017, then Purchaser shall provide to Seller's Attorney a certified or bank check made payable to Madeline Montefinese in the amount of $5,000.00 along with the notification of Purchaser's election to exercise the Option pursuant to this Paragraph 2... The $5,000.00 is non-refundable and is in addition to the purchase price of $1,125,000.00.*

*3. Upon full execution of this Addendum by both Seller and Purchaser and the release to Purchaser of such fully executed Addendum pursuant to Paragraph 4 below, the Escrowee shall release to Seller the Downpayment in the amount of $56,250.00.*

*4. Upon execution of this Addendum by Purchaser, Purchaser shall provide to Seller's Attorney a certified check made payable to Seller in the amount of $28,387.00, which certified check shall be held in escrow by Seller's Attorney until (a) Seller shall have executed this Addendum, and (b) the fully executed Addendum shall have been released to Purchaser. Upon Seller's execution of this Addendum, then Seller's Attorney shall release (a) the certified check to Seller and (b) the fully executed Addendum to Purchaser... The said sum ($28,387.00) represents additional consideration paid by the Purchaser to the Seller in addition to the purchase price of $1,125,000.00. The $28,387.00 is non-refundable.*

*5. Time is of the Essence against the Purchaser with respect to all dates set forth herein. If closing does not take place by February 23, 2017 or the extended date of March 27, 2017, then all monies given herein shall remain the property of the Seller and the contract is null and void without further notice. Purchaser authorizes the Escrowee to distribute the funds if any, as per this Addendum to Contract.*"[Emphasis Supplied] (See Exhibit 2).

14. Debtor extended the closing date to the 'extended date' of March 27, 2017 provided in the Addendum (the "3/27/17-TOE Closing").

15. On and at the 3/27/17-TOE Closing, Movants were ready, willing, and able to perform under the Contract and Addendum and deliver the Property to Debtor.

16. At all times on and at the 3/27/17-TOE Closing, Movants were ready, willing, and able to perform under the Contract and Addendum, deliver the Property to Debtor, and close on the

---

[1] The respective Social Security and Tax Identification numbers of Debtor and its principal have

3

sale of the Property.

17. The Debtor never objected to the 3/27/17-TOE Closing, nor gave any prior indication that Debtor was not going to close on the 3/27/17-TOE Closing date.

18. For the 3/27/17-TOE Closing, the Firm, on behalf of Movants, prepared a proposed deed (to be executed and delivered to Debtor at the 3/27/17-TOE Closing) and made arrangements with Omni Title Agency, 6800 Jericho, Syosset, NY (the "Title Company"; which was engaged by Debtor for the subject transaction) to prepare the ACRIS documents relative to the Movant's NYS and NYC transfer tax returns. Annexed to the Motion collectively as Exhibit 5 is a copy of the proposed deed, ACRIS documents and an email from the Title Company's title closer, Mr. Cliff Lewisohn, confirming my requested corrections to typographical errors in draft of the ACRIS Documents[2].

19. On March 27, 2017, Movants were ready, willing, and able to execute and deliver to Debtor all documents (and take all other appropriate actions) required from Movants under the Contract to close the sale of the Property, upon tender of the balance of the Purchase Price and any adjustments or other payments required under the Contract (generally, "payment of Full Consideration and Performance").

20. Notably, at no point did Debtor or Debtor's Title Company assert that title to the Property was unmarketable or uninsurable, or any other reason why Movants were unable to convey marketable and insurable title to the Property to Debtor on the 3/27/17-TOE Closing date. On March 27, 2017 and prior thereto, I reviewed the Title Company's title report and amendments thereto (collectively the "Title Report"). [True and accurate copies of the Certification Page and Schedule B of the Title Report, are annexed to this Motion collectively as Exhibit 6].

---

been redacted from the copy of the ACRIS documents attached to the Motion.
[2] The respective Social Security and Tax Identification numbers of Debtor and its

4

21. Based on my review of the foregoing, and the fact that neither Debtor nor Debtor's Title Company asserted any objections to Movants' conveyance of title to the Property to Debtor, I respectfully submit that Movants were ready, willing, and able to deliver good marketable and insurable title to the Property to Debtor on the 3/27/17-TOE Closing date.[3]

22. However, Debtor's counsel emailed me at 8:43 a.m., on the morning of the 3/27/17-TOE Closing, advising that "Unfortunately my client has cancelled the closing today." See Exhibit 4, email from Cris Gottlieb, Esq. Later that morning, the Debtor filed its Chapter 11 petition. Suffice it to say, the Debtor failed to appear at the 3/27/17-TOE Closing.

23. Therefore, as a result of Debtor's failure and refusal to appear at the 3/27/17-TOE Closing and tender of payment of Full Consideration and Performance, Debtor defaulted under the Contract.

24. I note that the Downpayment was not yet been released to Movants, notwithstanding the clear provision in Paragraph Three of the Addendum permitting Escrowee to "release to Seller the Downpayment in the amount of $56,250.00" upon the December 28, 2016 execution and delivery of the Addendum.

25. The release of the funds was deferred as an administrative convenience for Movants, as per Movants' instructions, to have funds at the closing, for payment of typical costs, e.g.,

---

principal have been redacted from the copy of the Addendum attached to the Motion..

[3] I further note that the Movants are the children and the heirs at law and next of kin of Giovanna Montefinese ("Giovanna"), who died intestate on June 5, 2014, in Kings County, New York. At the time of her death, Giovanna was the record owner of the Property. The Title Company was prepared and ready to insure title to the Property to Debtor based on Movants' capacity as the children and the heirs at law and next of kin of Giovanna. To this end, the Title Company requested two (2) standard heirship affidavits: one from Ms. Maria Limite, who was the niece of Pasquale Montefinese (Giovanna's late husband), attesting to Giovanna's known distributes and family history (the "Limite Heirship Affidavit"), and the other from Ms. Gloria I. Quinteros, who was childhood friend of movant Maria Josephine Montefinese a/k/a Maria J. Salerno, attesting to Giovanna's known distributes and family history (the "Quinteros Heirship Affidavit"). I provided both of these requested heirship affidavits to the Title Company on May 11, 2016, and August 11, 2016, respectively. Attached as Exhibit 7 to the Motion are copies of those heirship affidavits, along with emails from Cliff Lewisohn of the Title Company confirming receipt of same and that they were acceptable to the Title Company; as well as email from Cliff Lewisohn confirming the March 27, 2017 closing date . The heirship affidavits and death certificate

transfer taxes, legal fees, and title closer gratuity. Of course, if Movants or the Firm had any indication that rather than close, the Debtor intended to file a bankruptcy petition and invoke the automatic stay on the 3/27/17-TOE Closing date, the Firm would have released the entire Downpayment to Movants forthwith, pursuant to Paragraph Three of the Addendum.

26. Therefore, it is respectfully submitted that the Court should grant the Motion in all respects.

**WHEREFORE**, it is respectfully requested that the relief requested in the instant Motion be granted in all respects, and such other relief as the Court deems just and proper.

Bradley D. Zam

Sworn to this 7th day of June, 2017

NOTARY PUBLIC

JEFFREY GANGEMI
Notary Public, State of New York
No 02GA6027549
Qualified in Kings County
Commission Expires July 6, 2019

have been redacted to redact certain personal information of the affiants and decedent.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

**In re**

**1231 41 STREET, LLC,**

Debtor.

--------------------------------------------------------x

**AFFIDAVIT IN SUPPORT**

**Chapter 11**

**Case no.  1-17-41407-ess**

STATE OF NEW JERSEY          )
                                                    )ss.:
COUNTY OF MONMOUTH       )

Vincenzo Montefinese, being duly sworn, hereby deposes and says the following:

1. I am one of the *contract vendors* under a Residential Contract of Sale, whereby Debtor agreed to purchase the property located at 1231 41st Street, Brooklyn, New York 11218 (the "Property"), as contract vendee. The other *contract vendors* are my siblings,  Madeline Montefinese a/k/a Maddalena Montefinese ("Madeline") and Maria Josephine Montefinese a/k/a Maria J. Salerno ("Maria"). [Myself, Madeline and Maria shall hereinafter be collectively referred to as the "Movants"].[1]  As such, I am fully familiar with, and have personal knowledge of, the facts and circumstances relating to the instant Case.

2. I submit this affidavit in support of Movants' instant motion seeking *inter alia* an order vacating the automatic stay pursuant to 11 U.S.C. §362(d) (the "Motion").

3. I hereby adopt, reiterate and re-allege all of the statements of fact provided in the accompanying affidavit of Madeline Montefinese a/k/a Maddalena Montefinese (the

---

[1] We, the Movants are the children and the heirs at law and next of kin of Giovanna Montefinese ("Giovanna"), who died intestate on June 5, 2014, in Kings County, New York. At the time of her death, Giovanna was the record owner of the Property.

1

"Madeline Affidavit"), submitted in support of Movants' Motion, as if fully set forth herein. In addition, I have read the annexed Motion To Vacate Automatic Stay prepared by my attorneys, Coritsidis & Lambros, PLLC (the "Motion Papers"), and I believe the facts stated therein to be true, to the best of my knowledge and belief.

4.  Based upon the Motion Papers and Madeline Affidavit, it is respectfully submitted that the Court should grant the Movants' Motion in its entirety.

**WHEREFORE**, it is respectfully requested that the instant motion by Movants be granted in its entirety, and that the Court grant Movants such other relief as the Court deems just and equitable.

_____
Vincenzo Montefinese

Sworn to this 4 day of
June, 2017

NOTARY PUBLIC

MIRJANA MAHON
Notary Public - State of New Jersey
My Commission Expires Jan 5, 2020

2

## UNIFORM FORM CERTIFICATE OF ACKNOWLEDGMENT
### (Out of State or Foreign General Acknowledgment Certificate)

State of New Jersey     )
County of Monmouth   ) ss.:

On the 4th day of June in the year 2017 before me, the undersigned personally appeared **Vincenzo Montefinese**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual (s) whose name (s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature (s) on the instrument the individual (s), or the person upon behalf of which the individual (s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of New Jersey that the foregoing paragraph is true and correct.

_____
Signature and Office of individual
taking acknowledgment

> MIRJANA MAHON
> Notary Public - State of New Jersey
> My Commission Expires Jan 5, 2020

Sworn to and subscribed
before me this
4th day of June, 2017

3

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

**In re**

**1231 41 STREET, LLC,**

                       Debtor.

-------------------------------------------------------x

<u>**AFFIDAVIT IN SUPPORT**</u>

**Chapter 11**

**Case no.  1-17-41407-ess**

STATE OF NEW YORK    )
                             )ss.:
COUNTY OF KINGS       )

Maria Josephine Montefinese a/k/a Maria J. Salerno, being duly sworn, hereby deposes and says the following:

1. I am one of the *contract vendors* under a Residential Contract of Sale, whereby Debtor agreed to purchase the property located at 1231 41st Street, Brooklyn, New York 11218 (the "Property"), as contract vendee. The other *contract vendors* are my siblings, Madeline Montefinese a/k/a Maddalena Montefinese ("Madeline") and Vincenzo Montefinese ("Vincenzo"). [Myself, Madeline and Vincenzo shall hereinafter be collectively referred to as the "Movants"].[1] As such, I am fully familiar with, and have personal knowledge of, the facts and circumstances relating to the instant case.

2. I submit this affidavit in support of Movants' instant motion seeking *inter alia* an order vacating the automatic stay pursuant to 11 U.S.C. §362(d) (the "Motion").

---

[1] We, the Movants are the children and the heirs at law and next of kin of Giovanna Montefinese ("Giovanna"), who died intestate on June 5, 2014, in Kings County, New York. At the time of her death, Giovanna was the record owner of the Property.

3.  I hereby adopt, reiterate and re-allege all of the statements of fact provided in the accompanying affidavit of Madeline Montefinese a/k/a Maddalena Montefinese (the "Madeline Affidavit"), submitted in support of Movants' Motion, as if fully set forth herein. In addition, I have read the annexed Motion To Vacate Automatic Stay prepared by my attorneys, Coritsidis & Lambros, PLLC (the "Motion Papers"), and I believe the facts stated therein to be true, to the best of my knowledge and belief.

4.  Based upon the Motion Papers and Madeline Affidavit, it is respectfully submitted that the Court should grant the Movants' Motion in its entirety.

    **WHEREFORE**, it is respectfully requested that the instant motion by Movants be granted in its entirety, and that the Court grant Movants such other relief as the Court deems just and equitable.

_____
Maria Josephine Montefinese
a/k/a Maria J. Salerno

Sworn to this 3 day of
June, 2017

_____
NOTARY PUBLIC

JESSICA LAFAMAN
Notary Public - State of New York
NO. 01LA6193413
Qualified in Kings County
My Commission Expires 9/15/20

2

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---

IN RE                                                    Chapter 11

    **1231 41 STREET, LLC,**                     Case 1-17-41407-ess

                **Debtor.**

---

## AFFIDAVIT OF SERVICE BY MAIL

    Paloma Garcia being sworn deposes and says: I am not a party to this action and I am over 18 years of age.

    On June 7, 2017, I served the within **Notice of Hearing dated June 7, 2017, Motion to Lift the Automatic Stay dated June 2, 2017, Affidavit of Bradley D. Zam Sworn to June 7, 2017, Affidavit of Vincenzo Montefinese Sworn to June 4, 2017, Affidavit of Maria Josephine Montefinese a/k/a Maria J. Salerno Sworn to June 3, 2017, Affidavit of Madeline Montefinese a/k/a Maddalena Montefinese Sworn to June 2, 2017, and Exhibits 1 through 7 annexed thereto** upon the following parties or attorneys in this action, at the addresses stated below, by depositing a true copy of same enclosed in a postpaid, First Class, properly addressed wrapper, in an official depositary under the exclusive care and custody of the United States Postal Service within the State of New York.

*Debtor*
1231 41 STREET, LLC
4415 13th Avenue
Brooklyn, New York 11219

Solomon Rosengarten, Esq.
*Attorney for Debtor*
1704 Avenue M
Brooklyn, New York 11230

*U.S. Trustee*
Office of the United States Trustee
Eastern District of NY
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, New York 10014

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

_____
Paloma Garcia

Sworn to before me on
this 7th day of June, 2017

_____
Notary Public

JEFFREY GANGEMI
Notary Public, State of New York
No 02GA6027549
Qualified In Kings County
Commission Expires July 6, 2019