Rubin LLC
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
Fax: 212.390.8064
E-mail: prubin@rubinlawllc.com
Paul A. Rubin

*Proposed Counsel for Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re:

1231 41 STREET, LLC,

               Debtor.

------------------------------------------------------x

Hearing Date: June 29, 2017<br>10:00 a.m.

Chapter 11

Case No. 17-41407 (ESS)

## DEBTOR'S OBJECTON TO MOTION TO VACATE THE AUTOMATIC STAY

       1231 41 Street, LLC, the above captioned debtor and debtor-in-possession (the "Debtor"),

by its proposed counsel, Rubin LLC[1], hereby submits this objection to the motion of Madeline

Montefinese a/k/a Maddalena Montefinese, Vincenzo Montefinese, and Maria Josephine

Montefinese  a/k/a Maria Salerno (collectively, the Movants") dated June 7, 2017  seeking to

vacate the automatic stay as more particularly described below (the "Motion") [ECF Dkt. No. 17].

In support thereof, Debtor respectfully represents as follows:

### FACTUAL BACKGROUND

      1.     On or about April 27, 2016, the Debtor entered into a contract (together with the

rider thereto, the "Residential Contract of Sale") to purchase from Movants the real property

---

[1] Debtor and Solomon Rosengarten, the attorney who filed this case on behalf of Debtor, have determined that it is in the best interests of the Debtor for it to retain Rubin LLC as its bankruptcy counsel in this case.  Rubin LLC has prepared and provided to the Office of the United States Trustee a draft retention application with supporting declarations and substitution of counsel, and it is Debtor's intent to file the retention application with the Court shortly.

known as and located at 1231 41st Street, Brooklyn, New York 11218 (the "Property") for the sum of $1,125,000. A copy of the Residential Contract of Sale is annexed hereto as Exhibit A.

2.    The Property is a three-family residential house located in Brooklyn, New York.

3.    Upon or about the time of execution of the contract, Debtor made a down payment to Movants, in the amount of $56,250, to be held in escrow by Movants' counsel.   According to the Motion, Movant's counsel is currently holding the $56,250 down payment in escrow (Motion at ¶ 7).

4.    The Residential Contract of Sale provided that the closing would take place "on /ABOUT" August 25, 2016.  (Residential Contract of Sale, ¶15).

5.    Thereafter, Movants and the Debtor entered into an Addendum to Contract dated December 28, 2016 (the "Addendum"; the Residential Contract of Sale and the Addendum, collectively, the "Contract"), which amended the Residential Contract of Sale.  A copy of the Addendum is annexed hereto as Exhibit B.  The Addendum provided that the Debtor was required to pay Movants the sum of $28,387 upon execution of the Addendum, and that this sum represents additional, non-refundable consideration paid by Debtor in addition to the $1,125,000 purchase price. (Addendum, ¶4).

6.    Debtor made this $28,387 payment in accordance with the terms of the Addendum. (Motion at p.5, fn. 7).

7.    The Addendum provided that the closing on the sale of the Property to Debtor would take place on February 23, 2017, and that Debtor would have the option to make a further non-refundable payment to Movants in the amount of $5,000 to extend the closing date under the Contract to March 27, 2017, which payment would also be non-refundable and in addition to the $1,250,000 purchase price. (Addendum, ¶2).  Debtor timely made a payment in the amount of

2

$5,000 and exercised the option to extend the closing date to March 27, 2017. (Motion at p.5, fn. 7).

8.      The Addendum provided that time would be of the essence against purchaser with respect to all dates set forth in the Addendum.

9.      Debtor filed a voluntary petition for relief with this Court on March 27, 2017, before expiration of the deadline to close under the Contract.

10.     On April 20, 2017, a representative of the Debtor met with a representative of the United States Trustee for Debtor's initial interview. A representative of the Debtor did not appear for the Section 341 meeting that was scheduled for May 8, 2017, but Debtor's proposed counsel has advised the Assistant United States Trustee assigned to this case that the Debtor is prepared to appear at a rescheduled date for that meeting.

## THE MOTION

11.     The Motion seeks broad and sweeping relief that would strip Debtor of its primary asset. Specifically, the Motion seeks not merely an order of this Court: (a) vacating the automatic stay pursuant to 11 U.S.C. § 362(d) to permit Movants, as sellers, to receive and retain all sums paid by Debtor, as purchaser, pursuant to that certain Residential Contract of Sale and Addendum to Contract for the purchase and sale of the real property located at 1231 41st Street, Brooklyn, New York 11218, including but not limited to a down payment in the amount of $56,250; but much more importantly the Motion also seeks an order (b) vacating the automatic stay to permit Movants to exercise, do, or perform any act, right, or power, in connection with, arising out of, or relating to the property, including but not limited to: sell, convey, exchange, deliver, assign, lease, bequeath, gift or transfer or permit to be transferred, the Property to any person or entity in Movants' sole and absolute discretion; and/or pledge, mortgage, hypothecate, encumber, dispose

of, occupy or use the property in whole or in part in any manner or form. (Motion at 1).

12.    The Motion alleges that the automatic stay in effect in this case should be vacated: (i) under section 362(d) (1) of the Bankruptcy Code, because the Debtor's time to close on its purchase under the Contract has allegedly expired by operation of law; and (ii) under section 362(d)(2) of the Bankruptcy Code, because the Debtor allegedly has no equity in the aforementioned down payments and the Contract, and because the Contract is supposedly not necessary to an effective reorganization.

13.    More particularly according to the Motion, cause exists to lift the automatic stay because "the Debtor failed to close on the Contract, which was an 'all cash deal', and the Debtor's estate, therefore, has no further interest in the Contract Payments or the Property." (Motion at ¶ 44). Additionally, the Motion alleges that "the Debtor lacks equity in the Contract and the Property because the Debtor's time to close under the [Residential] Contract [of Sale] and the Addendum has expired . . . ." (Id. at 46).

14.    Movants further argue in the Motion that the automatic stay should be vacated because the Debtor did not appear for the section 341 meeting that was scheduled for May 8, 2017, and a representative of Debtor did not appear at the initial case management conference that was initially scheduled for May 8, 2017.

15.    The initial case management conference was adjourned and a status hearing has been scheduled for June 29, 2017, the same date as the return date of the Motion. [ECF Entry 5/16/2017].

16.    In support of the Motion, Debtor submitted, among other things, an affidavit sworn to on June 2, 2017 by one of the Movants, Madeline Montefinese, a/k/a Maddalena Montefinese ("Madeline's Affidavit"). Ms. Montefinese asserts in her affidavit that Movants have intentionally

not leased the Property in anticipation of a closing, and that the Property's vacancy "has made it impossible to secure sufficient property insurance." ("Madeline's Affidavit" at ¶ 8). The affidavit does not describe or document any efforts by Movants to obtain insurance for the Property, and it does not specify what amount or type of insurance that the Debtor has sought or been able to obtain. Nor does the Motion include any evidence regarding what amount of rents the Movants claim they would have allegedly collected had they rented the Property between the signing of the Residential Contract of Sale and the commencement of this case.

17.    Worse, Ms. Montefinese further alleges in her affidavit that: "[T]he conclusion is inescapable that Debtor did not commence this bankruptcy Case to complete the sale of the Property, but rather, **to ransom** Movant's ability to sell the Property, in exchange for a return of some of the Debtor's Downpayment. It is respectfully submitted that the Court should not permit Debtor to use the processes of this Court for illegitimate leverage." (Madeline's Affidavit at ¶ 25)(emphasis added).

## THE MOTION SHOULD BE DENIED

18.    **The Debtor is Not Seeking Ransom from the Movants**. To put it mildly, Movants' allegation that Debtor commenced this case not in order to facilitate a closing under the Contract, but to extract a ransom from them in the form of a return of Debtor's $56,250 down payment, constitutes an improper attempt to denigrate the Debtor in the eyes of the Court. Nothing could be further from the truth. The Debtor filed this case in order to preserve its ability to close under the Contract. Debtor is not seeking a return of any portion of the $89,637 that it has already paid to the Movants.

19.    Moreover, Debtor is not seeking any reduction in the purchase price that it has agreed to pay for the Property pursuant to the Contract.

5

20.     After the Motion was filed, Debtor's undersigned proposed counsel requested a meeting with Movant's and their counsel to discuss Debtor's desire to close without changing the economic terms under the Contract, but Movants refused just to meet. Debtor continues to hope that Movants will consent to such a meeting so that the parties can discuss cooperation, rather plunge forward with time-consuming and expensive litigation, but at this stage, given Movants' position, Debtor has no choice but to respond to the Motion.

21.     **Contrary to Movant's Allegations, the Contract Did Not Terminate By Operation of Law**. Citing *In re New Breed Realty Enters., Inc.*, 278 B.R. 314, 322 (Bankr. E.D.N.Y. 2002) and two New York state court decisions not involving bankruptcy filings by contract vendees, Movants argue in the Motion that: "Cases interpreting New York law are unanimous in holding that the failure to close by the specified closing date in a sales contract that declared time to be of the essence is a material breach which **terminates** [the] defaulting party's right to enforce the contract." (emphasis added). Significantly, the *New Breed* case cites several New York state court decisions for this proposition, but those cases do not address the status of a contract where the purchaser becomes a debtor under the Bankruptcy Code before expiration of its time to close under the purchase agreement.

22.     Movant's own Motion cites case law which stand for the proposition that the filing of a bankruptcy petition by a contract vendee before expiration of the closing date set forth in a contract extends the time in which the debtor/purchaser may close by at least sixty days. (Motion at ¶37, citing case law discussing impact of 11 U.S.C. § 108(b)). This demonstrates that the mere failure of a contract vendee to close by the specified closing deadline set forth in a sales contract that declared time to be of the essence, but who becomes a chapter 11 debtor under the Bankruptcy Code before expiration of that closing date, **DOES NOT** result in termination of the contract.

23.    Accordingly, it is indisputable that the Debtor's interest in the Contract did not terminate simply because the closing did not take place on or before March 27, 2017. Rather, the filing of this chapter 11 case had the effect of preserving Debtor's interest in the Contract beyond the time of the essence closing date. The next question becomes which section of the Bankruptcy Code governs the amount of additional time the Bankruptcy Code affords the debtor/contract vendee to cure its default and close under its executory contract.

24.    **Code Section 365, the Specific Provision Addressing Assumption and Cure Under Defaulted Executory Contract, Applies Instead of the More General Section 108(b).** Movants argue in their Motion that section 108(b) of the Bankruptcy Code is the relevant Code section that determines the amount of time a debtor has to cure its failure to close on its purchase under a pre-petition executory contract to purchase real property. (Motion, ¶¶ 37-38, 41). Section 108(b) of the Bankruptcy Code provides, in relevant part, as follows:

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a bankruptcy proceeding, or an agreement fixes a period within which the debtor . . . may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of-
>
>   (1) the end of such period . . . ; or
>   (2) 60 days after the order for relief.

11 U.S.C. § 108(b). But Section 108(b) does not address assumption and cure of defaults under pre-petition executory contracts. There is a provision in the Bankruptcy Code that addresses precisely this issue.

25.    Section 365(b)(1) of the Bankruptcy Code provides, in relevant part, as follows:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the

7

trustee-

> (A) cures, or provides adequate assurance that the trustee
> will promptly cure, such default other than a default
> that is a breach of a provision relating to satisfaction of
> any provision (other than a penalty rate or penalty
> provision) relating to a default arising from any failure
> to perform nonmonetary obligations under an unexpired
> lease of real property, if it is impossible for the trustee
> to cure such default by performing nonmonetary acts at
> and after the time of assumption . . . .

11 U.S.C. § 365(b)(1).[2]

26.    As noted by the court in *In re Walden Ridge Dev. Co., LLC*, 292 B.R. 58, 66 (Bankr. D.N.J. 2003), a pertinent case that Movants omit from their Motion and which adopts an approach unlike *New Breed*: "The majority of courts have determined that the 60-day limitation on cure periods provided in § 108(b) **does not alter** the specific provisions of § 365." (emphasis added). The *Walden Ridge* court proceeded to state that: "It has long been recognized that 'Section 108(b) does not apply to curing defaults in executory contracts. Section 365 specifically governs the time for curing defaults in executory contracts and thus it controls." *Id.* (quoting *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1215 (7th Cir. 1984), *cert. denied*, 469 U.S. 982 (1984)).

27.    Similarly, in *In re Tudor Motor Lodge Assocs., Ltd. Partnership*, 102 B.R. 936, 951 n.8 (Bankr. D.N.J. 1989), the court stated: "The court here notes that to the extent there is a conflict between the specific provisions of §§ 362, 365 and 105, and the general provision of § 108, (which provides for a 60-day limitation on cure periods), the specific provisions prevail."

28.    Indeed, courts across the country have recognized that the specific assumption and

---

[2] Notably, the decision in *New Breed* makes clear that an agreement for the purchase of property, where performance remains outstanding on both sides as of the petition date (payment of the remaining purchase price by debtor and delivery of the property to be sold by seller), and a default in performance by either party would be a material default, is an executory contract within the meaning of section 365 of the Bankruptcy Code. *See New Breed Realty*, 278 B.R. at 319.

assignment provisions of § 365 prevail over the general provisions of § 108.  *See In re Round Hill Travel, Inc.*, 52 B.R. 807, 808 (Bankr. D. Nev. 1985); *In re Henke*, 84 B.R. 693, 697 (Bankr. D. Mont. 1988); *In re ERA Central Regional Services, Inc.*, 39 B.R. 738, 741 (Bankr. C.D. Ill. 1984); *In re Masterworks, Inc.*, 100 B.R. 149, 151-52 (Bankr. D. Conn. 1989).  As a rule of statutory construction, where two provisions apply, the more specific provision governs.  *See Int'l Playtex, Inc. v. Rapino (In re Rapino)*, 11 B.R. 651, 657 (Bankr. E.D.N.Y. 1981).

29.    For the purposes of the Motion, therefore, it is the language in § 365 that must be examined.    Section 365(d)(2) of the Bankruptcy Code, which specifically governs the cure of defaults under executory contracts, provides that:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan, but the court, on request of any party to such contact or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2).  Movants' argument that the Debtor's ability to assume the Contract terminated on May 26, 2017 (Motion, ¶ 41) is simply incorrect.

30.    Movant's remaining argument concerning executory contract assumption is that Debtor cannot assume the Contract under section 365 of the Bankruptcy Code because Debtor allegedly cannot cure its failure to pay the purchase price under the Contract.    The relevant provision is Section 365(b)(1) of the Bankruptcy Code, which is quoted above.  Section 365(b)(1) excuses a debtor from curing defaults related to nonmonetary obligations under an unexpired lease of real property.  The plain language of section 365(b)(1) does not state or even imply that a debtor cannot cure **a payment default** under a pre-petition executory contract.    Here, the Debtor's default that needs to be cured relates solely to the payment of money by a date certain—that is a

classic monetary default of the sort that is commonly cured by debtors in connection with the assumption of executory contracts.

31.     Debtor's monetary (payment) default here is clearly distinguishable from the type of incurable, nonmonetary defaults that were discussed in *New Breed*.  Notably, the defaults discussed in *New Breed* (278 B.R. at 320) relate to historical facts constituting non-monetary defaults that are incapable of being cured.  For example, *In re Toyota of Yonkers, Inc.*, 135 B.R. 471, 477 (Bankr. S.D.N.Y. 1992), involved a debtor's failure to operate a car dealership for seven consecutive days, which was a default under debtor's franchise agreement and the debtor could not undo this historical fact.  In *In re Lee West Enters., Inc.*, 179 B.R. 204, 206 (Bankr. C.D.Cal. 1995), the debtor's closure of an automobile dealership constituted a material default that was a historical fact that was incapable of being cured.  Similarly, in *In re Mack*, 1993 WL 72255 (Bankr. E.D.Pa. Nov. 10, 1993) the court found that prior illegal drug activity at the debtor's leasehold constituted a non-monetary breach of a lease agreement that was incapable of being cured. Likewise, the court concluded in *In re Deppe*, 110 B.R. 898, 904 (Bankr. D.Minn. 1990) that the debtor's failure to maintain operations at a gas station was a historical fact that was incapable of cure.  Finally, the debtor in *In re GP Express Airlines, Inc.*, 200 B.R. 222, 233 (Bankr. D.Neb. 1996) was an airline that defaulted by failing to meet performance standards related to flight performance and utilization of certain accounting services.  In short, the cases relied upon by the court in *New Breed* involved non-monetary defaults that were incapable of being cured—not payment defaults.

32.     *In re Empire Equities Capital Corp.*, 405 B.R. 687 (Bankr. S.D.N.Y. 2009), one of the cases cited by Movants, is distinguishable.  There, the court made it clear that it had before it an option contract for the debtor's purchase of loans, which the debtor had no obligation to take

up. 405 B.R. at 691. Here, in contrast, the Debtor had a payment obligation under the Contract (*see* ¶ 14(a) of Residential Contract of Sale, referring to obligation of Purchaser to pay the purchase price; opening paragraph of Addendum, which states that it amends the Residential Contract of Sale). It is clear and undisputed that, before commencement of this case, the Debtor exercised its option to extend the closing date to March 27, 2017, and that this case was filed before Debtor's time in which to close under the Contract had elapsed.

33.     Moreover, the only default here was a failure to pay money, which is a monetary default that can be cured. Section 365(b)(1) does not state or imply that a payment default cannot be cured. To treat a failure to pay money on or before the due date as a nonmonetary default would effectively render it impossible for debtors to cure payment defaults under executory contracts. There simply is no such rule.

34.     **Movants Have Not Demonstrated "Cause" Warranting Vacatur of the Automatic Stay.** "The automatic stay provision of the Bankruptcy Code . . . has been described as 'one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Envt'l Prot.*, 474 U.S. 494, 503 (1986)(quoting S. Rep. No. 95-989 at 54 (1978); H.R. Rep. No. 95-595 at 340 (1977)).

35.     Section 362(d)(1) does not define what constitutes "cause" for vacating the automatic stay. Courts in this Circuit have determined that in examining whether cause exists, they "must consider the particular circumstances of the case and ascertain what is just to the claimants, the debtor and the estate." *City Inc. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983). Courts in the Second Circuit have interpreted this as requiring "good cause." *See In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990); *Morgan Guar. Trust Co. v. Hellenic Lines Ltd.*, 38 B.R. 987, 998 (S.D.N.Y.

11

1984).

36.     Indeed, courts have emphasized that they will not lift the automatic stay without a showing of "extraordinary circumstances" warranting relief. *See In re R.F. Cunningham & Co.*, 355 B.R. 408, 412 (Bankr. E.D.N.Y. 2006)("Only in extraordinary circumstances will an unsecured creditor be granted relief from the automatic stay."); *see also In re Keene Corp.*, 171 B.R. 180, 185 (Bankr. S.D.N.Y. 1994)("[A] court will not grant relief from the automatic stay, absent 'extraordinary circumstances,' simply to liquidate an unsecured claim."); *In re Leibowitz*, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992)(Unsecured creditors "should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief.").

37.     The burden of demonstrating cause lies firmly with the party seeking to lift the stay. *Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 48 (2d Cir. 1997). "Only when the movant makes such a showing does any burden shift to the Debtors; absent a showing of cause, the court should simply deny relief from the stay." *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir. 1999); *see also In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990)(If movant fails to satisfy burden of establishing cause, the court "should deny relief without requiring any showing from the debtor that it is entitled to continued protection.").[3]

38.     Movants have not met their heavy burden of establishing cause to justify vacating the automatic stay in this case. Debtor is prepared to work with Movants to discuss consummating its purchase on a consensual basis without lowering the purchase price, and Debtor's principal is prepared to appear at a re-scheduled section 341 meeting. The Motion contains no explanation concerning the unsubstantiated allegation that Movants have been unable to obtain "sufficient"

---

[3] Notably, Movants have not argued in their Motion that they satisfy the so-called "*Sonnax Factors*" identified by the Second Circuit Court of Appeals in that case.

insurance for the Property because it has no tenants at this time, nor does it explain what Movants

deem to be "sufficient" insurance. Furthermore, the Motion presents no evidence as to the amount

of rent allegedly lost since they have kept the Property vacant.

39.    Furthermore, granting of the Motion would work a forfeiture. Debtor would lose

not simply credit for the money it has already paid Movants under the Contract, Debtor would also

lose its rights under the Contract itself, its main asset. "Bankruptcy Courts, as courts of equity,

should look with disfavor on contract forfeitures." *In re* Lavigne, 114 F.3d 379, 387 (2d Cir.

1997). This is especially true where, as here, the Debtor seeks to close on its purchase and Debtor

is not, as Movants accuse, trying to use the filing of this case as ransom to compel the return of

any of the $89,637 in payments that it has made in good faith to Movants in order to preserve its

rights under the Contract.

40.    **Movants Are Not Entitled to Stay Relief Under Code Section 362(d)(2)**. Section

362(d)(2) of the Bankruptcy Code provides in relevant part as follows:

> On request of a party in interest, and after notice and a hearing, the
> court shall grant relief from the stay provided under subsection (a)
> of this section, such as by terminating, annulling, modifying, or
> conditioning such stay-
>
> > (2) With respect to a stay of an act against property under
> > subsection (a) of this section, if--
> >
> > (A) the debtor does not have an equity in such property;
> > and
> >
> > (B) such property is not necessary to an effective
> > reorganization.

11 U.S.C.§ 362(d)(2).

41.    On a motion for relief from the automatic stay, the moving party bears the burden

of proving that the debtor lacks equity in the property. 11 U.S.C. § 362(g)(1). Movants' argument

that the Debtor no longer has an interest in the Contract is incorrect. As demonstrated above, the Contract was an executory contract under section 365 of the Bankruptcy Code as of the filing of this case, and pursuant to section 365(d)(2) of the Bankruptcy Code, Debtor has until confirmation of plan of reorganization to assume or reject it.

42.    The Contract is also necessary for an effective reorganization. The Contract is the Debtor's primary asset. The Debtor's exclusive periods in which to file and confirm a plan of reorganization are still extant. The Debtor should have a fair opportunity right to propose and confirm a plan of reorganization as contemplated under the Bankruptcy Code. As the court stated in *In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 407 (Bankr. S.D.N.Y. 2001): "This Debtor, like all others, is entitled to the opportunity to attempt a reorganization, and at the early stages in the case this principle weighs heavily in Debtor's favor."

## CONCLUSION

For the foregoing reasons, Debtor respectfully requests that the Court deny the Motion and that the Court grant Debtor such other and further relief as is just and proper.

Dated: New York, New York
        June 22, 2017

RUBIN LLC

By:/s/ Paul A. Rubin
      Paul A. Rubin

345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com

*Proposed Counsel for the Debtor*

14

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
In re:

1231 41 STREET, LLC,

             Debtor.

-----------------------------------------------------x

Chapter 11

Case No. 17-41047 (NHL)

STATE OF NEW YORK     )
                      ) ss:
COUNTY OF KINGS      )

        SAMUEL PFEIFFER, being duly sworn, deposes and says, under the penalties for perjury, as follows:

    1. I am the managing member of 1231 41 Street, LLC.

    2. I am submitting this statement in support of Debtor's foregoing Objection of Debtor to Motion to Vacate the Automatic Stay (the "Objection).

    3. I know the facts alleged by Debtor in the Objection to be true to my own knowledge.

                                 _____
                                           Samuel Pfeiffer

Sworn to before me this
22 day of June, 2017

_____
Notary Public

JEROLD SILBERSTEIN
Notary Public State of New York
No. 01SI6030805
Qualified in Kings County
Commission Expires 07/18/2018

15