Coritsidis & Lambros, PLLC
46 Trinity Place, 4th Floor
New York, New York 10006
Tel: (212) 797-4600
Fax: (212) 797-4601
Email: Jeffrey@corilamb.com
Jeffrey A. Gangemi, Esq.

*Attorneys for Movants Madeline Montefinese a/k/a Maddalena*
*Montefinese, Vincenzo Montefinese and Maria Josephine*
*Montefinese a/k/a Maria J.Salerno*

**Hearing:  June 29, 2017**
**10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

_____x

**IN RE**

**1231 41 STREET, LLC,**

                          Debtor.

_____x

**Chapter 11**

**Case No.: 1-17-41407-ess**

**REPLY TO DEBTOR'S OBJECTION TO**
**MOTION TO VACATE THE AUTOMATIC STAY**

1. Madeline Montefinese a/k/a Maddalena Montefinese, Vincenzo Montefinese and Maria Josephine Montefinese a/k/a Maria J. Salerno (collectively, the "Movants"), submits this reply affirmation in further support of their motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) (the "Lift Stay Motion"), and in reply to Debtor's objection to Motion, by its counsel, Rubin LLC (the "Debtor's Objection"; cited herein as "Obj.,¶___"). Capitalized terms used herein shall have the same meaning set forth in the Lift Stay Motion, unless otherwise set forth herein.

2. It is respectfully submitted that the Debtor's Objection provides no legitimate basis for the Court to deny the Movants relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2).

3. Debtor, by admitting it failed to avail itself of Section 108(b)'s sixty (60) day "statutory grace period" prior to May 27, 2017, i.e., sixty days from the date of the filing of the petition, for all intents and purposes concedes that it has no right under 11 U.S.C. § 108(b) to close on the Contract. In re New Breed Realty Enterprises, Inc., 278 BR 314, 319–20 [Bankr EDNY 2002].

4. Unable to rely on Section 108(b), Debtor's Objection is based entirely on the unsupported assertion that Debtor's failure to close by the March 27, 2017-time-of-the-essence closing date, was merely "a classic monetary default of the sort that is commonly cured by debtors in connection with the assumption of executory contracts," and that the subject Contract can therefore be assumed under 11 U.S.C. § 365, based on Debtor's own self-serving interpretation of the statute. See Obj., ¶30.

5. It is respectfully submitted that the cases cited in the Motion and herein below have specifically addressed this precise issue with similar facts, and held contrary to Debtor's position.

6. To begin, the Court in In re Empire Equities Capital Corp., 405 BR 687 [Bankr SDNY 2009], explained that Congress' enactment of the 2005 Amendments to the Bankruptcy Code (the "2005 Amendments"), made "clear" that non-monetary defaults in non-lease executory contracts must be cured by the Debtor in order to assume non-lease executory contract under Section 365, as follows:

> "…In 2005 Congress revised the language of § 365(b)(2)(D) by including the word "penalty" as a modifier to the word "provision," **making it clear that most non-**

**monetary defaults are not exempted from the cure requirements**. . . Congress did so, however, not by rejecting Claremont's statutory reading of § 365(b)(2)(D) but by adding new language in § 365(b)(1)(A) that requires a cure only of defaults **other than those "arising from any failure to perform non-monetary obligations under an unexpired lease of real property**." . . By amending § 365(b)(1)(A) only with respect to unexpired leases of real property, however, **Congress provided no room for the contention that non-monetary defaults in non-lease executory contracts are exempt from the cure obligation**. . .As Congress is presumed to act with knowledge of existing judicial precedent when enacting legislation. . . **the 2005 amendments thus establish that a debtor must cure most defaults arising from an executory contract that is not a real property lease**. (Emphasis Supplied);[Citations and footnotes omitted]. Id. at 690–91.

7. Accordingly, Debtor cannot avail itself of Section 365(d)(2) of the Bankruptcy Code without first satisfying of express cure requirements under Section 365(d)(1). Id.; See Also In re New Breed Realty Enterprises, Inc., supra. Here, Debtor admits that the subject Contract is an executory contract containing a 'time-of-the-essence provision.' See Obj., ¶8. ("The Addendum provided that time would be of the essence against purchaser with respect to all dates set forth in the Addendum."). Debtor further admits that it defaulted under the Contract when "Debtor filed a voluntary petition for relief with this Court on March 27, 2017 before expiration of the deadline to close under the Contract." [Emphasis Supplied]. See Obj., ¶7 and ¶9. Debtor also does not deny that Movants were ready, willing, and able to close on March 27, 2017.

8. As a matter of law, Debtor's failure to close by the March 27, 2017-time-of-the-essence closing date, as set forth in the Addendum, was a material breach of the Contract which terminated Debtor's right to enforce the contract, "since the time-of-the-essence provision is an essential bargained for term of the contract." In re Empire Equities Capital Corp. 405 BR at 691; See Also In re New Breed Realty Enterprises, Inc., supra.

9. Debtor fails to cite any New York bankruptcy cases holding to the contrary, and instead, mistakenly relies on two New Jersey bankruptcy cases, In re Walden Ridge Dev., LLC and In re Tudor Motor Lodge Assoc., Ltd. Partnership, which are inapplicable to the case at bar.

10. In re Walden Ridge Dev., LLC, 292 BR 58 [Bankr DNJ 2003], cited at page 8 of Debtor's Objection, was decided before the enactment of the 2005 Amendments, when "courts disagreed on the effect of the cure requirements of § 365 on non-monetary defaults." In re Empire Equities Capital Corp., 405 BR at 690.

11. In addition, In re Walden was based upon New Jersey State law, not New York state law, as is applicable in the case at bar.

12. Indeed, "Courts examine the provisions of the underlying contract and non-bankruptcy law to determine the nature of a default and the cure it requires, for purposes of § 365." In re Empire Equities Capital Corp., 405 BR at 691. Here, unlike In re Walden, it is undisputed that the Contract is governed by New York Law, since the Property that is the subject of the Contract is located in New York.[1] Grossman v Melinda Lowell, Attorney at Law, P.A., 703 F Supp 282, 283 [SDNY 1989] ("…It is clear that New York law applies since the property that is the subject of the contract is located in New York.")

13. Debtor's assertion that the "several New York state court decisions [cited by Judge Craig in New Breed ]…do not address the status of a contract where the purchaser becomes a debtor under the Bankruptcy Code before expiration of its time to close under the purchase agreement," is disingenuous and of no moment. See Obj., ¶21.

14. Judge Craig correctly examined the provisions of the New Breed contract and applicable New York law for purposes of § 365, and determined that "[c]ases interpreting New York

---

[1] In addition, the Contract was entered into in New York, the Movants are all residents of New York, and Debtor's principal office is located in the County of Kings, State of New York.

law are unanimous in holding that the failure to close by the specified closing date in a sales contract that declared time to be of the essence is a material breach which terminates defaulting party's right to enforce the contract." <u>In re New Breed Realty Enterprises, Inc.</u>, 278 BR at 322–23.[2]; See Also <u>Perillo v De Martini</u>, 54 AD2d 691, 692 [2d Dept 1976] ("Since defendant was given a reasonable time in which to perform, plaintiff had the right to declare him in default and to consider the contract terminated").

15. Based on overwhelming New York case law, Judge Craig held in *New Breed*:

> "… the debtor is not relieved from its obligation to cure the non-monetary default arising from its failure to close by the time of the essence closing date. If the debtor was permitted to assume the Agreement under § 365, the debtor would be circumventing the effect of a material provision which goes to the fundamental right to remain in or end a contractual relationship… It follows that the debtor does not have a right to assume the Agreement under § 365(d)(2) because it cannot cure all defaults as required by § 365(b)(1)." [Citations and quotation marks omitted]. <u>In re New Breed Realty Enterprises, Inc.</u>, 278 BR at 325.

16. Similarly, the Court in *In re Empire Equities Capital Corp.*, held:

> "…The Debtor's default was in failing to take action within the time provided for in the contract. Under New York law, "the failure to close by the specified closing date in a sales contract that declared time to be of the essence is a material breach which terminates defaulting party's right to enforce the contract," since the time-of-the-essence provision is an essential bargained for term of the contract. See New Breed, 278 B.R. at 322–23, 325, and cases cited therein. Under the uncontested facts of this matter, the <u>Debtor's failure to close on time is incurable and the contract cannot be assumed under § 365</u>." (Emphasis Supplied) <u>In re Empire Equities Capital Corp., 405 BR at 691.</u>

---

[2] Citing: "… E.g., *Grace*, 46 N.Y.2d at 566–67, 415 N.Y.S.2d 793, 389 N.E.2d 107; *EC, L.L.C. v. Eaglecrest Manufactured Home Park, Inc.*, 275 A.D.2d 898, 899, 715 N.Y.S.2d 170 (4th Dep't 2000) … *Dub v. 47 East 74th Street Corp.*, 204 A.D.2d 145, 611 N.Y.S.2d 198 (1st Dep't 1994) … *Mohen*, 162 A.D.2d 664, 557 N.Y.S.2d 108 … *Palmiotto v. Mark*, 145 A.D.2d 549, 536 N.Y.S.2d 101 (2d Dep't 1988) … *Woodwork Display Corp. v. Plagakis*, 137 A.D.2d 809, 812, 525 N.Y.S.2d 273 (2d Dep't 1988) … *Zahl v. Greenfield*, 162 A.D.2d 449, 450, 556 N.Y.S.2d 393 (2d Dep't 1990) … *Greto v. Barker 33 Assoc.*, 161 A.D.2d 109, 110, 554 N.Y.S.2d 546 (1st Dep't 1990) … *Perillo v. De Martini*, 54 A.D.2d 691, 692, 387 N.Y.S.2d 280 (2d Dep't 1976) … *In re Southold Dev. Corp.*, 134 B.R. 705, 708–710 (E.D.N.Y.1991) … *Rhodes v. Astro–Pac, Inc.*, 51 A.D.2d 656, 378 N.Y.S.2d 195 (4th Dep't 1976) …"

17. The Debtor here, just like the debtor in *New Breed,* admittedly defaulted post-petition under contract to purchase New York real property which contained a '*time-of-the-essence provision.*'

18. Debtor's assertion that "Section 365(b)(1) does not state or imply that payment default cannot be cured," conveniently ignores the law stated above in a post 2005 New York bankruptcy case: that "*Courts examine the provisions of the underlying contract and non-bankruptcy law to determine the nature of a default and the cure it requires, for purposes of § 365*", and doing so under New York law, "*the failure to close by the specified closing date in a sales contract that declared time to be of the essence is a material breach which terminates defaulting party's right to enforce the contract*". In re Empire Equities Capital Corp., supra.

19. Therefore, the Courts in *New Breed* and *Empire Equities Capital Corp.* properly analyzed the underlying contract and non-bankruptcy law to determine the nature of the respective defaults and the cures it required, for purposes of § 365. Furthermore, Debtor's attempt to distinguish *Empire Equities Capital Corp.* from the present case should be rejected. The *Empire* Court specifically found "the time-of-the-essence provision is an essential bargained for term of the contract;" which is not only factually applicable to the instant Contract's 'time-of-the-essence provision,' but completely undermines Debtor's assertion that it merely committed "a classic monetary default." The "time-of-the-essence provision" in the Addendum was a bargained-for, material term, which Debtor cannot disregard, as a matter of law.

20. To be sure, the two (2) recent New York State cases cited in the Motion, New Colony Homes, Inc. v Long Is. Prop. Group, LLC, and Kaiser-Haidri v Battery Place Green, LLC,

confirm that the authorities cited by Judge Craig in *New Breed* are still good law, and that Debtor's failure to perform on the March 27, 2017 time-of-the-essence closing date was an incurable default. See New Colony Homes, Inc. v Long Is. Prop. Group, LLC, 21 AD3d 1072 [2d Dept 2005] and Kaiser-Haidri v Battery Place Green, LLC, 85 AD3d 730, 733 [2d Dept 2011].

21. In both New Colony Homes, Inc. and Kaiser-Haidri, the Supreme Court of the State of New York Appellate Division – Second Department expressly held:

> "...*where time is of the essence, performance on the specified date is a material element of the contract, and failure to perform on that date constitutes, therefore, a material breach of the contract*." New Colony Homes, Inc. v Long Is. Prop. Group, LLC, 21 AD3d at 1073; Kaiser-Haidri v Battery Place Green, LLC, 85 AD3d at 733.

22. Indeed, in Gaia House Mezz LLC v State St. Bank and Trust Co., 720 F3d 84, 94 [2d Cir 2013], the United States Court of Appeals for the Second Circuit cited and endorsed *New Colony Homes, Inc.*, as follows:

> "...*Additionally, the district court erred in defining the Events of Default as trivial or technical breaches when the parties expressly agreed to designate the Events of Default as material. The Agreement included a time-is-of-the-essence clause, which rendered the deadlines material. See New Colony Homes, Inc. v. Long Island Prop. Grp., LLC, 21 A.D.3d 1072, 803 N.Y.S.2d 615, 616 (2005) ("[W]here time is of the essence, performance on the specified date is a material element of the contract, and failure to perform on that date constitutes, therefore, a material breach of the contract.")* "[Emphasis Supplied]. Id. at 94.

23. Debtor's lame attempt to distinguish New Colony Homes and Kaiser-Haidri as non-bankruptcy cases, sidesteps the "...the real issue ... that the Debtor's default cannot be cured at all." In re Empire Equities Capital Corp., 405 BR at 691.

24. In view of the foregoing, the *In re Walden* Court's election "...not follow the lead of *New Breed* in characterizing the failure of a buyer to pay the purchase price under an executory

contract as a non-monetary default,"[3] was contrary to long established precedent in New York, as cited by Chief Judge Carla Craig and reaffirmed by *In re Empire Equities Capital Corp.*, which still remains controlling law.

25. The other case cited by Debtor, <u>In re Tudor Motor Lodge Assoc., Ltd. Partnership</u>, 102 BR 936 [Bankr DNJ 1989], is also distinguishable since it was based on New Jersey Law and did not involve a contract for the purchase of real property located in New York, but rather, a License Agreement which entitled the debtor to a limited, non-exclusive license to operate a Days Inn Franchise Hotel, at a 120 unit hotel located in Cherry Hill, New Jersey, owned by Debtor, which was a limited partnership formed under New Jersey law in 1985. 102 BR at 938–39.

26. Notably, given that Debtor admittedly took no action to close under the Contract within sixty (60) days after the petition was filed, Section 108(b)'s sixty (60) day "statutory grace period" provides no assistance to Debtor's unsubstantiated contention that it can assume the Contract under Section 365. In fact, Debtor concedes that "Section 108(b) does not address assumption and cure of defaults under pre-petition executory contracts." See <u>Obj.</u>, ¶24.

27. In sum, Debtor's conclusory assertion that "the only default here was a failure to pay money, which is a monetary default that can be cured," is directly refuted by the Courts of the State of New York and the Bankruptcy Courts of the Southern and Eastern Districts of New York, cited above. See <u>Obj.</u>, ¶33.

28. "[A]court cannot rewrite the parties' bargain based on its own notions of fairness and equity." <u>In re 785 Partners LLC</u>, 470 BR 126, 132 [Bankr SDNY 2012]. Here, the Movants specifically negotiated and bargained-for a closing by March 27, 2017 'time-of-the-essence", as set forth in the Addendum. Debtor materially breached the Contract by failing to close by

---

[3] See <u>In re Walden Ridge Dev., LLC</u>, 292 BR at 67.

the March 27, 2017-time-of-the-essence closing date. This uncontested fact cannot be undone, and Debtor should not be permitted to use the Bankruptcy Court to attempt to rewrite the parties' bargain or a historical fact. Therefore, in all respects, Debtor's reliance on 11 U.S.C. § 365, is unavailing.

29. Since (x) Debtor admittedly failed to avail itself of Section 108(b)'s sixty (60) day "statutory grace period" prior to May 27, 2017, and (y) "Debtor's failure to close on time is incurable and the contract cannot be assumed under § 365," the Debtor no longer has any interest in the Property or the Contract or any sums paid by Debtor to Movants pursuant to the Contract and Addendum to Contract, including the Downpayment in the amount of $56,250.00 or the Contract Payments. In re Empire Equities Capital Corp., 405 BR at 691. Consequently, neither the Contract Payments nor the Property can be a part of any reorganization. Thus, sufficient cause exists to lift the automatic stay in this case pursuant to 11 U.S.C. § 362(d)(1) and (2).

30. Lastly, Movants' suggestion that Debtor's inaction in this case reflects more an exercise to ransom a return of some or all of its forfeited downpayment, than an effort to reorganize, is neither disingenuous nor denigrating. It offers the only plausible strategy for a party which eschewed any step or movement towards a genuine plan of reorganization. This is especially so where in its effort to continue the automatic stay, Debtor erroneously argues that all that needs to happen is that a 'monetary default be cured' but does not suggest to this Court, if this were so (which it is not), the result would have been or will be any different, because: (i) Debtor's estate contains no money, whatsoever, let alone the over one million dollars necessary to purchase the Property; (ii) no reorganization plan has been filed to promote such payment and cure, or how it would be secured; (iii) admittedly, neither Debtor nor any

"representatives of the Debtor appeared at the Section 341(a) meeting on May 8, 2017" where Debtor's intentions would have been raised, whether voluntarily, or upon the inevitable status inquiry of the Trustee or the Movants; and (iv) finally, even in its passionate effort to avoid the lifting of the stay, Debtor mentions nowhere that it can raise the funds, let alone that Debtor's principals are prepared to fund the purchase price themselves.

31. To the contrary, Debtor states its expectations, should it succeed, as follows:

> *"Debtor's undersigned proposed counsel requested a meeting with Movant's and their counsel to discuss Debtor's desire to close without changing the economic terms of the Contract, but Movants refused just to meet. Debtor continues to hope that defendants would consent to ... a meeting so that the parties can discuss cooperation, rather than plunge forward with time consuming and expensive litigation ...".* See Obj., ¶20.

32. Clearly, Debtor has no plan or funds, because if it did, not only would it have done one or more of items (i) through (iv), above, but most of all, at the time Debtor's counsel admittedly called to request a meeting, rather than simply stating what the meeting would not involve, Debtor's counsel would have proffered some sort of plan.  Instead, Debtor's agenda was to discuss its "*desire to close without changing the economic terms*".  First, Debtor could not unilaterally change the Contract or its "economic terms", even if it wished to—so this was no offer which would justify a meeting. Secondly, despite erroneously championing the argument that all Debtor needs to do is show it has the money to close, Debtor never offered to Movant's counsel, that Debtor has the money to close, or that it could be obtained anytime soon.

33. So, it can verily be deduced, that the "cooperation" Debtor needed was time, which like money, was something Debtor knows it does not have; and but unlike money, Debtor could not admit it knows it does not have.  And given the long effortless passage of time where

Debtor has done nothing, it is apparent that Debtor seeks time for time's sake, to compel Movants to compromise their own interests, not Debtor's.

34. It is ironic, on two fronts, that Debtor's counsel disparages Movants alleging that they seek to "plunge forward with time consuming and expensive litigation". The first irony is the instant motion is being made by Movants <u>to conclude</u> the time consuming and expensive litigation which this bankruptcy filing constitutes for them. This includes the costs of maintaining a large vacant three-family home in Brooklyn.[4]

35. The second irony, is that Debtor has the confidence that this Court has the legal and actual ability to use its common sense and knowledge to attribute a significant and costly value and likelihood to "expensive litigation"; but cannot do so to the testimony of the hardship of having to maintain, and pay taxes and insurance for a large home in Brooklyn, which cannot be rented because it is being held for sale (please see accompanying reply affidavit Girolamo Grillo stating the Property could generate $5,100.00 in monthly rental income); or the difficulty of insuring a vacant building.

36. Indeed, the Contract allows Movants only the liquidated damages of the Contract Payments. Thus, Movants are relegated to suffer the diminishing value of any liquidated damages, and a general ongoing hardship. Indeed, this hardship would be exacerbated by "time consuming and expensive litigation, if, as Debtor points out, the stay is not lifted and Debtor continues a

---

[4] As shown in Exhibit 1, the annual real estate taxes for the Property are currently $4,361.48. As shown in Exhibit 2, the *annual* insurance for the Property at the time when the Contract was signed was $2,478.81, and expired on August 8, 2016. Thereafter, since the Property was held vacant for sale, Movants were unable to secure regular homeowner's insurance, and were compelled to obtain 'forced-placed' type policies for double the amount of the prior homeowner's insurance. Particularly, from 11/8/16 to 5/8/17, Movants obtained a *six month term* policy for $2,502.49. Thereafter, Movants obtained a new policy from 5/8/17 to 5/8/2018 for $4,122.51. In addition, the current insurer has requested that Movants perform certain work to the Property including the repair of the sidewalk and replacement of the existing circuit breaker panel. See Exhibit 2 hereto.

bankruptcy case whose history and applicable law, have rendered it in appropriate, as a matter of fact and law. Finally, it is respectfully submitted that the relief sough herein is eminently just and simply will allow the Movants to receive and retain the Contract Payments and dispose of the Property as they see fit, without further impact by the Debtor or its pending bankruptcy case.

37. Therefore, the Movants are entitled to an order lifting the automatic stay under both sections 362(d)(1) and (d)(2) of the Bankruptcy Code.

### CONCLUSION

WHEREFORE, Movants respectfully request that the Court grant the Lift Stay Motion in all respects, and grant Movants such other, further and different relief as the Court may be just and proper.

Dated:      New York, New York
            June 27, 2017

Coritsidis & Lambros, PLLC

/s/ Jeffrey A. Gangemi
By: Jeffrey A. Gangemi (JG-1116)
*Attorneys for Movants*
*Madeline Montefinese a/k/a Maddalena*
*Montefinese, Vincenzo Montefinese and*
*Maria Josephine Montefinese a/k/a Maria J.*
*Salerno*
46 Trinity Place, 4th Floor
New York, New York 10006
(212) 797-4600, Fax (212) 797-4601
Jeffrey@corilamb.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
**In re**

**1231 41 STREET, LLC,**

                                        Debtor.
----------------------------------------------------------x

|                        |        |
|------------------------|--------|
| STATE OF NEW YORK      | )      |
|                        | )ss.:  |
| COUNTY OF NEW YORK     | )      |

**Chapter 11**

**Case no.  1-17-41407-ess**

Madeline Montefinese a/k/a Maddalena Montefinese, being duly sworn, hereby deposes and

says the following:

1.  I, along with my brother, Vincenzo Montefinese ("Vincenzo") and sister, Maria Josephine

    Montefinese a/k/a Maria J. Salerno ("Maria"), are the alleged sole creditor of debtor 1231 41

    Street, LLC ("Debtor") [Myself, Vincenzo and Maria shall hereinafter be collectively

    referred to as the "Movants"].

2.  I am submitting this statement in further support of Movants' instant motion seeking *inter

    alia* an order vacating the automatic stay pursuant to 11 U.S.C. §362(d) (the "Motion"), and

    in reply to Debtor's objection to the Motion dated June 22, 2017 ("Debtor's Objection").

3.  I know the facts alleged by Movants in this Reply to Debtor's Objection to the Motion to be

    true to my knowledge.

                                                    _____
                                                    Madeline Montefinese a/k/a
                                                    Maddalena Montefinese

Sworn to this 27th day of
June, 2017

_____
NOTARY PUBLIC

JEFFREY GANGEMI
Notary Public, State of New York
No 02GA6027549
Qualified In Kings County
Commission Expires July 6, 2019

13